# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

DARRIN A. GRUENBERG,

|                        | Plaintiff,        | OPINION & ORDER |
|---|---|---|

    v.

                                            13-cv-089-wmc

SGT. CASPER *et al.*,

                  Defendants.

Plaintiff Darrin Gruenberg has been granted leave to proceed in this lawsuit on claims for excessive force and deprivation of legal materials while he was housed at the Dane County Jail. Defendants have moved to dismiss this case, arguing that Gruenberg has failed to exhaust his administrative remedies with respect to both claims. Based on the undisputed facts, the court agrees and will dismiss Gruenberg's suit without prejudice.[1]

### A. Facts

The allegations surrounding Gruenberg's claims in this suit can be summarized as follows. Gruenberg alleges that on February 24, 2011, he was temporarily housed at the Dane County Jail ("DCJ"). At one point, defendant Deputy Voeck instructed Gruenberg to leave his legal materials outside of his holding cell. When Gruenberg objected and began to argue, Voeck radioed for assistance. Defendant deputies Johnson, Raymond, Schuster, Laffin and Leatherberry responded and, despite Gruenberg's lack of physical resistance, they

---

[1] Gruenberg has also filed a motion to reconsider this court's order denying him leave to file a sur-reply brief (dkt. #41), along with the proposed sur-reply. The court has read the sur-reply and it does not change the outcome of this case. Accordingly, the motion to file the sur-reply is denied as moot.

allegedly slammed him into the concrete floor.  The deputies then forced him into a restraint chair and placed a "spit mask" on his head.

Gruenberg remained restrained for more than two hours.  Allegedly, at a nurse's suggestion, one of the deputies also maliciously tightened the arm restraints on the chair, causing Gruenberg pain.  Defendant Sergeant Casper, who has supervisory authority over the other defendants, allegedly witnessed these events but did not intervene.

### B.  Grievance Process

The parties do not dispute the material facts surrounding Gruenberg's use of the DCJ grievance procedure.  Gruenberg was booked into the DCJ on February 21, 2011, at which time he was given a copy of the DCJ Inmate Handbook.  (*See* Michael Statz Aff. Ex. B (dkt. #31-2).)   The Handbook details the DCJ formal grievance procedures, including a procedure for appealing grievances that are denied.  (*See id.* at Ex. A (dkt. #31-1) 25-26.)

Shortly after the incident on February 24, 2011, Gruenberg was transferred back to Columbia Correctional Institution ("CCI").  After the transfer, Gruenberg requested by mail, and DCJ Administration Secretary Lori Prieur mailed him, a grievance form.

Gruenberg completed the form as required, challenging both defendants' use of force and their refusal to allow him his legal materials.  On the second page, below the signature line, Gruenberg wrote, "Grievant requests an appeal form if it becomes necessary to appeal. Thx."  (*See id.* at Ex. C (dkt. #31-3) 2.)  Gruenberg returned this completed form to the DCJ by March 15, 2011.

The grievance was assigned to Sgt. Casper, who investigated and concluded on March 22, 2011, that defendants should be "exonerated."  While Casper found that the

2

incident had happened, she concluded that the use of force in question was lawful.  She also found that the denial of Gruenberg's papers was in line with property procedures.  (*See id.* at Ex. D (dkt. #31-4).)  Gruenberg implicitly admits being provided the written denial of his grievance, but complains that he was not given an appeal form or otherwise instructed as to the procedure for appeal.  (*See* Compl. (dkt. #1) ¶¶ 78, 175-76.)  On the other hand, Gruenberg knew an appeal was possible and had been given a handbook setting forth the appellate process.  Furthermore, Gruenberg neither requested an additional appeal form from the DCJ, nor did he try to appeal on a non-DCJ form.  Ultimately, there is no dispute that Gruenberg's grievance went unappealed.

## OPINION

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The purpose of this requirement is to "give the prison administrators a fair opportunity to resolve the grievance without litigation." *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1007 (W.D. Wis. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006)).  In the Seventh Circuit, exhaustion of administrative remedies is a "condition precedent to suit."  *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002). Furthermore, the PLRA requires proper exhaustion, meaning that "[p]risoners must follow state rules about the time and content of grievances."  *Riccardo v. Rausch*, 375 F.3d 521, 523-24 (7th Cir. 2004).  Failure to exhaust properly forecloses judicial review.

However, the PLRA requires only that inmates exhaust remedies that are *available* -- meaning remedies that are available in fact, not just in form.  *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013).  A remedy may be unavailable when prison officials prevent an inmate from accessing it.  *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (per curiam).  For instance, the plaintiff in *Dale* requested grievance forms several times from multiple employees, was "told that the employees did not have grievance forms," and was given blank sheets of paper instead.  *Id.* at 655.  Moreover, the applicable federal regulations required that grievances be submitted "on the appropriate form," *id.* at 656 (quoting 28 C.F.R. § 542.14(a)) and the defendants did not present any evidence that they would accept grievances written out on plain paper.  As a result, the Seventh Circuit held in *Dale* that defendants had not met their burden to prove failure to exhaust:  "If prison employees refuse to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies."  *Id.*

This case bears some similarities to *Dale*.  Like the federal regulations in that case, the DCJ Handbook appears to mandate that inmates use proper forms: letter (C) of the Formal Grievance Procedure states that an inmate must "[p]repare the grievance only on the form provided to you," and letter (G) provides that a grievance "will be rejected" if, among other reasons, it is not on the correct form.  (Michael Statz Aff. Ex. A (dkt. #31-1) 25.)  Furthermore, as in *Dale*, defendants have not suggested that the DCJ would accept am appeal that did not make use of the correct form.

Nevertheless, this case differs from *Dale* in a few important ways.  Unlike the inmate in *Dale*, Gruenberg made only a single request for an appeal form, asking the DCJ to send one "should an appeal become necessary."  More importantly, he made that request before

his grievance was even *investigated*, let alone rejected -- and thus before he had any grounds to appeal.  Furthermore, Gruenberg undoubtedly knew that to receive a DCJ appeal form after his transfer back to CCI, he could write to the jail and request one.  In fact, that is exactly how he acquired his original grievance form.  His decision *not* to write for an appeal form was apparently due to his lack of funds for postage, because he was at that time litigating an appeal in the Seventh Circuit (Darrin Gruenberg Decl. (dkt. #34) ¶¶ 11-12), but that does not excuse him from failing to exhaust properly.

The "unavailability" exception to complete exhaustion is intended to ensure that prison officials do not take unfair advantage of the exhaustion requirement.  *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  Thus, "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."  *Id.* (citing *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dale*, 376 F.3d at 656).  Here, there is no evidence of affirmative misconduct, nor is there evidence that DCJ officials mishandled Gruenberg's grievance.  At worst, the DCJ overlooked an ambiguous request (asking for an appeal form "should an appeal become necessary") that was made preemptively, before the original grievance was even investigated.

On this record, the court cannot say that the DCJ rendered Gruenberg's administrative remedies unavailable.  *Cf. Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (per curiam) (inmate did not exhaust where he made one request for a grievance form, was refused and never sought to obtain the form in some other way or file a grievance without a form).  Accordingly, the court will dismiss this case without prejudice for failure to exhaust.

ORDER

IT IS ORDERED that:

1) defendants' motion to dismiss for failure to exhaust (dkt. #29) is GRANTED.

2) plaintiff Darrin Gruenberg's motion to reconsider his request to file a sur-reply (dkt. #41) is DENIED AS MOOT.

Entered this 13th day of March, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge